UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re: ZYPREXA
PRODUCTS LIABILITY LITIGATION

------------------------------------------------------------x

THIS DOCUMENT RELATES TO:

ALL ACTIONS

------------------------------------------------------------x

MEMORANDUM AND
ORDER REGARDING
CONTROL
BY COURT OF
ATTORNEYS AND
CLIENTS IN
AGGREGATED
INDIVIDUAL CASES
04-MD-01596 (JBW)

APPEARANCES:

For the Plaintiffs:
SEEGER WEISS, LLP
One William Street
New York, New York 10004
BY:   CHRISTOPHER A. SEEGER, ESQ.
      DONALD A. ECKLUND, ESQ.

MILBERG WEISS
One Penn Plaza
New York, New York 10119
BY:   MELVYN I. WEISS, ESQ.

DOUGLAS & LONDON
111 John Street
New York, New York 10038
BY:   MICHAEL A. LONDON, ESQ.

HERSH & HERSH
2080 Opera Plaza
601 Van Ness Avenue
San Francisco, Ca. 94102
BY:   MARK E. BURTON, JR., ESQ.

RICHARDSON, PATRICK WESTBROOK
      & BROCKMAN, LLC



1037 Chuck Dawley Blvd
Post Office Box 1007
Mt. Pleasant, South Carolina 29464
BY:   H. BLAIR HAHN, ESQ.
      CHRISTIAAN MARCUM, ESQ.

THE BEASLEY FIRM
The Beasley Building
1125 Walnut Street
Philadelphia, Pennsylvania 19107
BY:   NANCY G. RHOADS, ESQ.

DAVID KUTTLES, ESQ.
RICHARD D. MEADOW, ESQ.
Tower 56
126 East 56th Street
New York, New York 10022

ABRAHAM, WATKINS, NICHOLS, SORRELS,
      MATTHEWS & FRIEND
800 Commerce Street
Houston, Texas 77002
BY:   DAVID P. MATTHEWS, ESQ.

HENINGER GARRISON DAVIS LLC
2224 1st Avenue North
Birmingham, Alabama 35203
BY:   LEW GARRISON, ESQ.

BURG SIMPSON ELDREDGE HERSH JARDINE, PC
40 Inverness Drive East
Englewood, Colorado 80112
BY:   SETH A. KATZ, ESQ.

FIBICH, HAMPTON & LEEBRON, LLP
Five Houston Center
1401 McKinney Street, Suite 1800
Houston, Texas 77010
BY:   TOMMY FIBICH, ESQ.

REICH & BINSTOCK
4266 San Felipe
Suite 1000
Houston, Texas 77027
BY:   DEBORAH LEPOW ZIEGLER, ESQ.

PARKER & WAICHMAN
111 Great Neck Road
Great Neck, New York 11021
BY: JASON MARK, ESQ.

ALEXANDER HAWES, & AUDET, LLP
221 Main Street
Suite 1460
San Francisco, California 94105
BY: WILLWIAM M. AUDET, ESQ.

HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street
Cambridge, Massachusetts 02142
BY: THOMAS M. SOBOL, ESQ.

SIMMONS COOPER
BY: ERIC TERRY, ESQ.

MILLER & ASSOCIATES
BY: MICHAEL MILLER, ESQ.

LEVIN, SIMES, KAISER & GORNICK
One Bush Street
San Francisco, California 94104
BY: LAWRENCE J. GORNICK, ESQ.

LEVIN, PAPANTONIO
BY: KIMBERLEY LAMBERT, ESQ.

For the Defendant: PEPPER HAMILTON, LLP
3000 Two Logan Square
Eighteenth & Arch Sts.
Philadelphia, Pennsylvania 19103
BY: ANDREW R. ROGOFF, ESQ.
    GEORGE A. LEHNER, ESQ.
    NINA GUSSACK, ESQ.

McCARTER & ENGLISH
245 Park Avenue
New York, New York 10167
BY: SAMUEL J. ABATE, JR, ESQ.

| For the FDA: | MICHAEL GOLDBERGER |
| --- | --- |
| | Assistant U. S. Attorney |
| | Brooklyn, New York |

| Special Masters: | KENNETH R. FEINBERG |
| --- | --- |
| | MICHAEL ROZEN |
| | PETER H. WOODIN |

JACK B. WEINSTEIN, Senior United States District Judge:

## I. Introduction and Summary

This mass tort action on behalf of over 8,000 private individuals against the pharmaceutical manufacturer Eli Lilly and Co. was transferred to this court by the Judicial Panel on Multidistrict Litigation on April 14, 2004. *See* 28 U.S.C. § 1407. A Final Settlement of the bulk of the cases was approved by the court and parties on November 22, 2005. Over 99% of the "settling plaintiffs" filed consents and releases. Some $700 million has been deposited in escrow to pay plaintiffs' individual claims when approved by the four Special Settlement Masters appointed by the court. The amounts of the payments will be determined by the Special Settlement Masters according to matrixes approved by the court.

The proceeding now requires the court to exercise its equitable and inherent powers to ensure that all settling litigants are treated fairly.

In large part because of inadequate documentary support, only about half of the claims have been approved for payment by the Special Settlement Masters. No money can be paid to any claimant under the terms of the settlement until some 86% of the claims have been so approved.

For the reasons indicated below, the court now orders that by July 17, 2006 all settling plaintiffs who have not yet done so must have filed documents necessary to support their claims,

conforming to the guidelines agreed upon in the Final Settlement Protocol, so that all pending settled cases can be approved for payment by the Special Settlement Masters by August 1, 2006. Any plaintiff who fails to comply—either by submitting an inadequately supported claim, or by failing to submit necessary documents—will be deemed to have abandoned the claim; the complaint will be dismissed with prejudice and the case reinstated only upon submission of affidavits showing good cause for the delay and a substantial basis for the renewed claim.

## I. Facts

Members of the Plaintiffs' Steering Committee ("PSC") and other plaintiffs' attorneys reached an agreement with Eli Lilly and Co. ("Lilly") in principle to settle a significant number of Zyprexa personal injury cases pursuant to a June 8, 2005 Memorandum of Understanding. *See* Order of June 30, 2005. Special Settlement Masters were appointed by the court to assist the parties in effectuating the settlement. *See id.* A Final Settlement Protocol was approved by the court after consulting with the PSC, other parties, and the Special Settlement Masters. *See* Order of November 22, 2005. Some $700 million has been deposited in an escrow fund, subject to court order, where it collects interest. *See* Order of August 15, 2005; Tr. of Status Conf., June 1, 2006. No money has been paid to any claimant.

It has been almost one year since the original Memorandum of Understanding was issued, and six months since the Final Settlement Proposal was approved. Some 99.6% of eligible plaintiffs—representing 8,362 individuals—have tendered releases to Lilly. *See* Letter of Christopher A. Seeger dated May 17, 2006. The Special Settlement Masters report that 4,087 claims have been approved by them for payment. Tr. of Status Conf., June 1, 2006.

5

Pursuant to the settlement agreement, no payment can be made to any of the more than 8,000 individuals who are participating in the settlement until at least 7,193 claims have been properly filed and approved by the Settlement Masters; 6,474 of these claims must be diabetes-related. According to the Special Masters, only 3,737 diabetes-related claims have been approved to date. That means an additional 3,106 claims—2,737 of them diabetes-related—must be approved before the Special Settlement Masters can authorize payments to anyone or the court can release any money from the escrow fund. *Id.*

The delay appears to be due in large part to the failure of some participating attorneys to provide the Settlement Masters promptly with appropriate documents supporting their claims.

At a Status Conference held June 1, 2006, Special Settlement Master Kenneth Feinberg reported that approximately one-third of potential claimants had delivered supporting documents that did not conform with the instructions for claim submission, while many others have not even filed claim forms. *Id.*

Those attorneys who have failed to meet their obligation to support their clients' claims promptly and properly cannot be allowed to imperil their own and every other attorney's clients by needless delay, placing unjust and unnecessary obstacles in the way of prompt payment of valid claims. The public interest and that of the parties, as a matter of law and equity, require prompt payment to those who have properly filed and supported valid claims.

## II. Law

### A. Quasi–Class Action

While the settlement in the instant action is in the nature of a private agreement between

individual plaintiffs and the defendant, it has many of the characteristics of a class action; it may be characterized properly as a quasi–class action subject to the general equitable power of the court. *See* Fed. R. Civ. P. 23(g)(1)(C)(iii); Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 1 ("just . . . determination of every action"); *cf.* Fed. R. Civ. P. 23(e)(1)–(2) (dealing with approval of terms of settlement). *See also In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 490 (E.D.N.Y. 2006) (quasi–class action status of aggregated claims for fee purposes). *Cf. United States v. Miami*, 614 F.2d 1322, 1330 (5th Cir. 1980) (discussing the "special situations in which the trial court is required by statute or rule to approve a settlement"). The large number of plaintiffs subject to the same settlement matrix approved by the court, the utilization of special masters appointed by the court to control discovery and to assist in reaching and administering a settlement, the court's order approving and controlling a huge escrow fund, other interventions by the court in controlling discovery for all claimaints, the employment of a multidistrict reference, and cooperation among many federal and state courts, reflect a degree of court control that supports the imposition of fiduciary standards to ensure fair treatment to all parties and counsel regarding issues such as settlement procedures. *See In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d at 491. In addition, the viability of an effective pharmaceutical industry and public health considerations necessitate efficient and fair control by the courts of cases of this kind.

In situations involving the aggregation of masses of individual cases in the form of one quasi–class action, "[t]here is a strong interest in allowing the transferee court to manage the consolidated action in the way that it believes will serve best the interests of justice and efficiency." American Law Institute, Complex Litigation Project: Appendix B, Reporter's Study:

A Model System for State to State Transfer and Consolidation, §6, cmt. c (Tentative Draft No. 4, October 23, 1992) (hereinafter "ALI Draft"). Recognizing the special difficulties presented by mass tort quasi–class actions, the Federal Judicial Center has advised that "[a]lthough the 'just, speedy, and inexpensive determination of every action' requirement applies to all cases, the difficult and sometimes contradictory demands posed by mass torts make case management both challenging and critical. The absence of precedent or of legislative or rule-making solutions *should not foreclose innovation and creativity.*" Manual for Complex Litigation, Fourth, § 22.1 (emphasis added).

Individual courts are obligated to rely on the "innovation and creativity" allowed by inherent equitable power when confronting the novel challenges of aggregate litigation. "The desire for consistency and efficiency that underlies the normal application of law of the case is outweighed in [complex aggregative litigation] by the need to ensure that the litigation in its consolidated form is handled fairly." ALI Draft, § 6, cmt. c.

Many of the same considerations that necessitate close judicial supervision of plaintiffs' counsel and proposed settlements in the class action context—such as protecting absent or disinterested litigants, and dealing with plaintiffs' practical inability to monitor their attorneys, some of whom represent hundreds of clients within the same litigation—apply to quasi–class actions such as the instant one. Some of the conventions *required* when a class is certified are *appropriate* in quasi–class actions involving large aggregations of claims. In both contexts, the primary goal of the court is to "ensure that similarly situated individuals receive equal fairness protections regardless of how the courts aggregated the litigation." L. Elizabeth Chamblee, *Unsettling Efficiency: When Non-Class Aggregation of Mass Torts Creates Second-Class*

*Settlements*, 65 La. L. Rev. 157, 241 (2004).

## B. Equitable Estoppel

In a broad sense, equitable estoppel is "[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true." *Black's Law Dictionary* (8th ed. 2004). It is "grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result," *Eastern Air Lines, Inc. v. The Ins. Co.* (In re Ionosphere Clubs, Inc.), 85 F.3d 992, 999 (2d Cir. 1996). Equitable estoppel can be "invoked successfully against a party who has occasioned a loss through an obvious lack of care or an affirmative act fairly identified as the cause of the loss." *Joint Venture Asset Acquisition v. Zellner*, 808 F. Supp. 289, 303 (S.D.N.Y. 1992).

## III. Application of Law to Facts

Inaction on the part of almost half the plaintiffs who agreed to be bound by the Final Settlement Agreement thwarts the ability of the remainder of claimants—some of whom have established serious illness and who are in need of prompt compensation—to recover. To avoid continued frustration by the few of the many, those plaintiffs who accepted the Final Settlement Protocol must submit proper claims to the Special Settlement Masters by July 17, 2006; the court finds that this requirement can be readily met. If a claim is not properly supported by that date, it will be deemed abandoned and will be involuntarily dismissed with prejudice. *See* Fed. R. Civ. P. 41(b). Subject to a motion to reopen, accompanied by affidavits of good cause for the delay

and a showing of substantial merit to the claim, a plaintiff with such an abandoned claim will be considered equitably estopped from withdrawing from participation in the Final Settlement Protocol or pursuing the claim independently.

Once 90% of the plaintiffs joined in the original multidistrict litigation ratified the settlement via a signed release, the agreement was to become effective and binding on all parties to the settlement, pursuant to the terms of the original Settlement Proposal. *See* Tr. of Status Conf., June 1, 2006, p. 16. When 8,362 plaintiffs to this quasi–class action (99.6%) agreed to be bound by the Final Settlement agreement, each knew that the ultimate success of the settlement hinged on each one's compliance with the settlement terms. Each plaintiff recognized that each would rely on the good-faith participation of every other.

Unnecessary delay in receiving compensation because of lack of required attention to their responsibilities by fellow claimants warrants application of equitable estoppel. A plaintiff who has "assumed a leading role in creating a very complex lawsuit . . . should not now be allowed to upset the recovery of the [other] plaintiffs" by inaction. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 952 (9th Cir. 1976). Delinquent plaintiffs (and their attorneys) should be deemed equitably estopped from disrupting a settlement beneficial to all the plaintiffs who have agreed to it if they fail to follow the procedure to which they formally committed themselves when they bound themselves to the settlement. There is no "opt-out" escape from the obligation of plaintiffs and attorneys who have already explicitly agreed to settle.

## IV. Conclusion

The claim of any plaintiff who fails to promptly submit acceptable supporting

documentation to the Special Settlement Masters by July 17, 2006 will be dismissed on the merits, subject to a motion to reinstate.

Plaintiffs' counsel, the PSC, the Special Settlement Masters, and Defendant's counsel shall confer and, if possible, arrive at a new minimum threshold for payment based on the number of claims approved by the Special Settlement Masters, so that those plaintiffs who have submitted approved claims may be promptly paid. If such an agreement is made, Special Settlement Master Feinberg has assured the court that checks to those claimants whose claims have been approved can be distributed within days. That will put millions of dollars in the hands of plaintiffs who need succor now.

SO ORDERED.

/s/ Jack B. Weinstein

Jack B. Weinstein

Dated: June 8, 2006
Brooklyn, New York